In re UNITED AMERICAN FINANCIAL CORPORATION, Debtor.

UNITED AMERICAN FINANCIAL CORPORATION, Plaintiff,

v.

FINANCIAL INTERSTATE SERVICE CORPORATION, formerly United American Service Corporation, Defendant.

Bankruptcy No. 3–83–00744.
Adv. No. 3–83–0629.

United States Bankruptcy Court,
E.D. Tennessee.

Jan. 11, 1984.
On Rehearing Feb. 8, 1984.

Bernstein, Susano, Stair & Cohen Bernard E. Bernstein, Doris C. Allen, Knoxville, Tenn., for plaintiff.

Derry O. Jackson, Stephen C. Zachary, Knoxville, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

Plaintiff, United American Financial Corporation (UAFC), seeks recovery on a note in the principal amount of $75,000.00 plus interest. Defendant, Financial Interstate Service Corporation, formerly United American Service Corporation, denies liability.[1] The facts have been stipulated.[2]

On August 13, 1981, United American Service Corporation (UASC) executed a note in the amount of $75,000.00 payable to United American Bank in Knoxville. (UAB). The note, executed by two duly authorized UASC officers—Tom Sudman, president, and Rita O. Dulin, secretary—was due in full on November 12, 1981. At the time of execution two of the four officers of UASC had authority to bind the corporation.

Prior to execution of the note of August 13, 1981, UASC and UAB were co-defendants in litigation commenced by the Wells Fargo Company over their use of the "express banking" logo. Both UASC and UAB were represented by J. Michael Winchester of the Ridenour law firm and the firm of Birch, Stewart, Kolasch & Birch, a Washington trademark law firm. A dispute arose between UASC and UAB over the division of legal fees, totaling $123,590.57, incurred in the Wells Fargo litigation. A meeting was held in either late March or early April 1981, to resolve the dispute. This meeting was attended by the attorneys for the parties, Ted Lamb, executive vice president of UASC, and Herbert Richardson, an officer of UAB. Although Tom Sudman was also present at the meeting, he did not stay the entire time and does not have any personal knowledge of the conclusion reached at the meeting. Two letters, both dated April 3, 1981, from J. Michael Winchester respectively addressed to Rita O. Dulin and to Richardson and Sudman reflect that an agreement was reached for UASC to pay one-third (⅓) and UAB to pay two-thirds (⅔) of all legal fees.[3] On March 27, 1981, UASC paid Birch, Stewart, Kolasch & Birch $23,514.45 in attorney fees. UASC also paid $13,462.85 in attorney fees to the Ridenour firm on April 2, 1981. On May 14, 1981, $75,000.00 was deposited in the UASC checking account by UAB. No note was executed at that time, however. On the same date a cashier's check for $75,000.00 was issued to the Ridenour firm; the remitter of this check is UASC. There is no question but that the $75,000.00 represented by the note dated August 13, 1981,

---

**1.** After this action was commenced defendant changed its name to Data One.

**2.** At all times pertinent to the transactions involved in this proceeding, *Jake Butcher* was president and chief executive officer of United American Bank in Knoxville (UAB), a director of United American Financial Corporation (UAFC) and a director of United American Service Corporation (UASC); *Tom Sudman* was both president and a director of United American Service Corporation (UASC) and an officer of United American Bank in Knoxville (UAB); *C.H. Butcher, Jr.* was a director of United American Service Corporation (UASC) and director and chairman of the board of United American Financial Corporation (UAFC).

**3.** See Exh. D and Exh. E attached to the Stipulations of the parties filed November 14, 1983.

was actually disbursed by UAB and paid to the Ridenour law firm by the cashier's check.

The execution of the note apparently came about in this way. In August 1981, Mr. Sudman was advised by a representative of Mr. Jake Butcher that $75,000.00 had been paid to the Ridenour firm for payment of legal fees in connection with the Wells Fargo lawsuit and that UASC should sign a note to document that transaction. According to Sudman, the note was prepared and signed rapidly because examiners were in the bank and the documentation was needed to clean up the file. Subsequent to execution of the note, on November 18, 1981, UAB sold the note to UAFC for $79,294.80, which amount equaled the total principal plus accrued interest to that date. Robert Wheeler, president of UAFC, handled the purchase of the note from UAB. He had no knowledge of any agreement between UAB and UASC with respect to either payment of the note or the dispute over the attorney fees.

As defenses to liability for payment of the note defendant UASC asserts: (1) plaintiff UAFC is not a holder in due course; (2) the note was executed without corporate authority; (3) the note was executed under duress and upon the representation that it would not be treated as an obligation of UASC; (4) UAB and UASC were under common control at the time of execution of the $75,000.00 note; and (5) no consideration was given in exchange for execution of the note. Although the court agrees that UAFC is not a holder in due course, UASC has failed to prove any of the remaining asserted defenses.

## II

■ To qualify as a holder in due course, among other requirements, a holder[4] must take an instrument[5] without notice that it is overdue. Tenn. Code Ann. § 47–3–302(1)(c) (1979). A purchaser is on notice that an instrument is overdue if he has reason to know that any part of the principal amount owing is overdue. Tenn. Code Ann. § 47–3–304(3)(a) (1979). The controverted note provides:

PAYMENT SCHEDULE: The balance owing hereunder is due and payable . . . in full (term) 91 days after date . . . .

Since the note is dated August 13, 1981, it was due on November 12, 1981. Because the note was overdue when purchased by UAFC on November 18, 1981, UAFC is not a holder in due course of the note.[6] This conclusion, however, merely enables UASC to assert defenses it could not have otherwise. See Tenn. Code Ann. § 47–3–305 (1979).

■ Tenn.Code Ann. § 47–3–306 (1979) enacts:

*Rights of one not holder in due course.* —Unless he has the rights of a holder in due course any person takes the instrument subject to:

(a) all valid claims to it on the part of any person; and

(b) all defenses of any party which would be available in an action on a simple contract; and

(c) the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose (§ 47–3–408); and

(d) the defense that he or a person through whom he holds the instrument acquired it by theft, or that payment or satisfaction to such holder would be inconsistent with the terms of a restrictive endorsement. The claim of any

---

**4.** "Holder" means a person who is in possession of a document of title or an instrument or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank. Tenn.Code Ann. § 47–1–201(20) (Supp. 1983).

**5.** In Chapter 3 of Title 47 of the Tennessee Code Annotated "instrument" means a negotiable instrument. Tenn.Code Ann. § 47–3–102(1)(e) (1979).

**6.** The note also recites that the instrument will be discussed with the lending officer at maturity. Nonetheless, UAFC had reason to know that the note was due and payable in full previous to its purchase of the note.

third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third person himself defends the action for such party.

Although initially asserting a lack of corporate authority, UASC has since stipulated that Tom Sudman and Rita O. Dulin were duly authorized to execute the note in question. Electing to rely upon the parties' Stipulations and exhibits attached thereto without proffering any additional evidence, UASC has failed to prove an absence of consideration, duress, or common control of UAB and UASC. There simply is no proof in the record to support any asserted defense which will exonerate UASC from liability on the note.

UAFC is entitled to judgment against UASC in the principal amount of $75,000.00, plus $23,039.91 interest accrued through May 31, 1983, plus interest thereafter, plus costs and a reasonable attorney fee in the amount of $5,000.00. Although the note provides for a reasonable attorney fee of not less than 15% of the unpaid balance if the note is referred to an attorney, the court is not bound by this term of the note. *Quaker Oats Co. v. Burnett,* 289 F.Supp. 283, 287 n. 8 (E.D.Tenn.1968).

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

### ON REHEARING

On January 11, 1984, the court entered judgment in the amount of $105,269.19, plus costs, in favor of the plaintiff and against defendant. A motion requesting rehearing, Bankruptcy Rule 8015, amendment of the court's findings of fact and conclusions of law, and amendment of the judgment, Bankruptcy Rule 9023, was filed by the defendant on January 23, 1984. Defendant maintains that the court erroneously found that consideration existed for the execution of defendant's note in the original principal amount of $75,000.00. Defendant further maintains that the court erred in finding that defendant failed to establish that United American Bank (UAB) and defendant were under common control at the time of the execution of the $75,000.00 note.

The court has re-examined the stipulations and exhibits filed on November 14, 1983, and reviewed defendant's brief, filed January 23, 1984. Although defendant refers to proof submitted in the form of depositions, no depositions are included in the record. There is no question that two officers with authority to bind the defendant corporation executed the $75,000.00 note, dated August 13, 1981. Further, there is no question that UAB disbursed $75,000.00 to the Ridenour law firm on May 14, 1981, through a cashier's check identifying defendant as the remitter. This disbursement represents the consideration for the subsequent execution of the defendant's note. It is not essential that consideration be directly received by the maker of a note. If UAB disbursed the $75,000.00 to the Ridenour law firm in a manner inconsistent with the interest and wishes of the defendant corporation the two corporate officers should not have executed the note. The fact remains that they did execute a note, on or about August 13, 1981, for $75,000.00 on behalf of the defendant. The court does not believe that it erred in finding consideration existed for the defendant's note.

Although some of the officers and/or directors of UAB (Jake Butcher, C.H. Butcher, Jr. and Tom Sudman) were also directors of the defendant, only one of the four officers (Sudman) having authority to bind the defendant was an official of UAB. The proof, consisting only of the stipulations and the exhibits, fails to establish common control of UAB and the defendant.

WHEREFORE, defendant's motion for rehearing and amendment of both the court's judgment and its findings and conclusions is DENIED.

IT IS SO ORDERED.